## Kochum v. Ezell.

(Decided November 24, 1925.)

## Appeal from Logan Circuit Court.

1. Appeal and Error—Decision of Chancellor as to Conclusiveness of Settlement Not Disturbed.—In accounting action for labor by tenant according to terms of crop lease, where it was shown that settlements had been made from time to time, evidence held insufficient to authorize Supreme Court to go behind settlements so as to overthrow decision of chancellor.

2. Landlord and Tenant—Damage to Owner's Strawberry Patch Held Not Established by Evidence.—In action for accounting by tenant for labor under terms of crop lease, counterclaim for damages to strawberry patch held not established by competent evidence.

3. Appeal and Error—Evidence of Conversion of Logs by Tenant Held Insufficient to Warrant Disturbing Chancellor's Finding of no Conversion.—In action for accounting by tenant for labor under terms of crop lease, evidence as to conversion of certain logs by employe held insufficient to warrant Supreme Court in disturbing finding of chancellor of no conversion.

4. Appeal and Error—Evidence that Provender Furnished by Owner had Been Converted by Tenant Held Insufficient to Warrant Overturning Chancellor's Finding.—In action for accounting by tenant for labor under terms of crop lease, where owner counterclaimed for provender alleged to have been converted, held that evidence as to whether provender was used for feeding stock belonging to owner was conflicting to extent that Supreme Court could not overturn chancellor's finding.

5. Appeal and Error—Evidence as to Damage of Machinery by Tenant Held Insufficient to Set Aside Judgment of Chancellor of no Damage.—In action for accounting by tenant for labor under terms of crop lease, evidence introduced on counterclaim for damages done to farming implements held insufficient to set aside judgment of chancellor of no damage.

6. Appeal and Error—Evidence as to Conversion of Hogs by Tenant Held Insufficient to Set Aside Chancellor's Judgment of no Conversion.—In action for accounting by tenant for labor under terms of crop lease, evidence introduced on counterclaim as to conversion of hogs belonging to owner held insufficient to set aside judgment of no conversion.

7.   Appeal and Error—Evidence Relative to Checks Alleged to have
     Been Converted by Tenant Held so Unsatisfactory as Not to War-
     rant Overruling of Chancellor's Finding.—In action for accounting.
     by tenant for labor under terms of crop lease, evidence introduced
     on counterclaim relative to checks alleged to have been converted,
     held so unsatisfactory as to not warrant overruling of finding of
     chancellor.

8.   Appeal and Error—Chancellor's Judgment will Not be Disturbed if,.
     After Considering Whole Case, it is Not Reasonably Certain that.
     He has Erred.—If, upon consideration of full case, mind is left in
     such doubt that it cannot be said, therefore, with reasonable cer-
     tainty that chancellor has erred, judgment will not· be disturbed.

S. R. CREWDSON and COLEMAN TAYLOR for appellant.

S. Y. TRIMBLE and O. M. SMITH for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Affirming.

In January, 1919, appellant and appellee entered into
a contract by which she leased to him a farm owned by
her in Logan county, Kentucky, the tobacco and corn
crops to be cultivated by him for an agreed part of the
products.   Under the contract he agreed to feed and care
for her live stock on the farm at $15.00 per month, she to
furnish the feed.   For all labor performed for her on the
farm appellee was to be paid $1.50 per day, except that
for labor in the hay harvest he was to be paid $3.00 per
day, as he contends, while she contends that he was to
do that work also at $1.50 per day.   In all other particu-
lars the parties agree as to what the contract was. · Ap-
pellee remained in possession of appellant's farm and
worked for her under that contract from January, 1919,.
until October 1, 1920.   He instituted this action against
her to recover $148.75, the amount alleged to be due him
for labor performed for her under the contract from
June 2nd to October 1, 1920.   She answered denying
liability, and, by way of counterclaim and set-off, sought
to recover from him approximately $2,350.00.   The an-
swer contained a plea for an accounting between the
parties, and by agreement the cause was transferred to
the court's equity docket.   Issue was joined on the
various causes of action set up as counterclaims, and
when the cause came on for trial before the chancellor
a judgment was entered awarding appellee $100.00 on his.
petition and dismissing appellant's counterclaim and set-
off.   This appeal has followed that judgment.

As counsel for appellant present her cause by brief, it is insisted that:

"1. She is entitled to recover money which she overpaid him.

"2. She is entitled to recover for the negligence of the strawberry and other crops.

"3. She is entitled to recover for the logs and timber appropriated by Ezell to his own use.

"4. She is entitled to recover for provender purchased by him and charged to her credit and account and converted to his own use, the sum of $322 50.

"5. She is entitled to recover damages done to machinery which was left in his care and negligently permitted by him to remain in the weather and deteriorate and become less valuable.

"6. She is entitled to recover for hogs converted to his own use.

"7. She is entitled to recover for money which she turned over to him to be paid to other parties and which Ezell converted to his own use."

The claim that appellant is entitled to recover money which she overpaid appellee grows largely out of the difference between them as to what he should be paid for his labor in the hay harvest. He claims she was to pay him $3.00 per day, and she claims that she was to pay only $1.50. The evidence discloses that from time to time after the making of the contract up to June 2, 1920, appellant and appellee made settlements on account of the work performed by him for her under the contract. When these settlements were made the various items of labor performed and the amounts charged therefor were reduced to writing by the parties, and after due consideration appellant would pay to appellee the amount due him according to the settlement. No proof is introduced for appellant and she does not claim that appellee did not work for her the number of days reported and agreed upon in the various settlements between them. The proof establishes that when these settlements were made appellant herself reduced the items and amounts to writing. It is inconceivable that if appellee was overcharging appellant for the work he had done for her she would not have discovered the fact and have declined to pay. Neither the pleadings nor proof would authorize us to go

behind the settlements on this question.    Hence, the chancellor properly disregarded that claim of appellant.

The second item in appellant's bill of particulars, as disclosed by the testimony relative thereto, is too insignificant to merit serious consideration.    Appellant testified as to it as follows:

"Q.    What about your strawberry patch?    A. I had a very nice patch of berries in 1918.

"Q.    Who put them out?    A.    Roy Stokes, some others and myself.    They were put ont in '17 and in '18; I put up something like 50 jars from those strawberries, and sold something like $15.00 worth, maybe a little more or less.

"Q.    Go on and tell what happened to the strawberry patch?    A.    I told them that they could have one-half of it if they would care for it, and on my return there was one quart of strawberries there.

"Q.    What was the condition of the patch?    A. I went out and spent one day pulling the weeds and they were doing nicely.

"Q.    Did you get any part of them?    A.    In 1920, I was going away and I did not get any at that time.

"Q.    What did you lose by not getting any of the strawberries?    A.    At least $50.00."

No competent evidence found in the record makes appellee answerable for the damage, if any, that she suffered on this account.

Appellant claims next that appellee appropriated to his own use certain logs and timber belonging to her which were on the farm when he took possession of it. The testimony discloses that the logs and timber in controversy were the logs from an old crib that had stood on the farm for fifty years or more which had been wrecked shortly before appellee took possession of the farm.    As to their value, one witness testified that they might have been made into crossties and sold for perhaps $25.00. He did not testify what it would have cost to convert the logs into crossties.    The proof for appellant was that the logs were on the farm when appellee took possession of it and that when he surrendered possession some of them were missing.    There is absolutely no proof that appellee took or converted to his use the logs that were missing.    The testimony for him was to the effect that all the

logs were there when he surrendered possession of the farm that were there when he took possession, and he explicitly denied having taken or used any of them. Under those facts, how can this court disturb the finding of the chancellor as to this insignificant item?

Under the fourth item of appellant's bill of particulars, it is claimed that she should recover $322.50 for provender of hers converted to his use. When finally analyzed the proof under this head establishes the amount of corn, shorts, hay and other feed stuff for live stock purchased for appellant and delivered on to her farm while appellee was in charge of it. It appears that this feed stuff was bought for her pursuant to arrangements she had made for its purchase; that it was charged to her by the various merchants from whom it was purchased; and that bills for same were submitted to her by them and were paid by her to them. The proof established the number of cattle, horses, mules and hogs on appellant's farm for which this feed was purchased. No direct evidence is found in the record that appellee converted any of this provender to his own use. It is attempted for appellant to reason or theorize that the amount of stock on her farm couldn't have eaten the amount of provender purchased and that raised on the farm. Appellees denied having converted any of it to his own use, and testified that he fed it to appellant's live stock in accordance with her instructions as to how the stock should be fed. Under that state of case it is not understood how this court can be expected to overturn the finding of the chancellor that appellant failed to manifest a right to recover on her counterclaim on this item.

Again, for appellant it is insisted that she should recover damages done to her farming implements and machinery while in appellee's possession by being permitted to stand in the weather when not in use. On this feature of the case appellant testified for herself and introduced the testimony of some two or three other witnesses. It tended to establish that her farming implements, consisting of wheat drill, disk harrows, cultivators and plows of various kinds, had always been kept under shelter by her and were in first-class condition when turned over to appellee, but that while in his possession they had been greatly damaged by being left in the open and rusting and rotting from the effects of the elements.

Appellee testified that he did not permit any of appellant's farm machinery to remain exposed to the weather except while in actual use; that after it was used it was all stored under shelter, and that it had not rusted or rotted or damaged as claimed by appellant. He also introduced several witnesses on the question who testified for him that the machinery in question bore no evidence of the damage claimed by appellant. Again it would seem to this court difficult to set aside the judgment of the chancellor on this item in view of the conflict in the evidence.

The next particular in which the chancellor is in error, as contended by appelllant, is with reference to certain hogs belonging to appellant alleged to have been converted by appellee. The proof for appellant on this question tends to establish that in August, 1919, twelve shoats were caught and penned on the farm for feeding, and that appellee failed to account for them when sold. She testified that there were a dozen of the shoats penned, and some two or three other witnesses testified that they saw a dozen shoats in the pen in August or September, 1919. For appellee the testimony tends to establish that there were only ten instead of twelve of the shoats penned in August, 1919; that one of them died, and that those remaining were fed until November 29, 1919, and then were sold for $189.33, the money being deposited to the credit of appellant in her bank at Auburn, Kentucky. The testimony of other witnesses for appellee tended to establish that there were only ten of the shoats penned, and appellant and her witnesses and appellee and his differ as to the size and weight of these pigs that were penned. On this item, as on the others discussed, no reason suggests itself to the court why we should say that the chancellor erred in his judgment.

Under the last heading, into which counsel for appellant has subdivided her claims against appellee, where it is urged that she is entitled to recover for money which she turned over to appellee to be paid to others but which he converted to his own use, appellant's brief refers to and discusses only two items, a check for $8.25 and a check for $12.75. Appellant makes her case as to the $12.75 by producing the check for that amount made payable to Ezell, in the face of which was written the words "for Brooks." She testified that she sent that check to Ezell directing him to cash it and pay Jerry Brooks the amount of it. Appellee denied that, and testified that the check

was sent him to pay his son for labor he had performed for appellant and that the words "for Brooks" were written into the check after it was cashed. We have no way of looking into the testimony of these parties, as it appears before us in print, and determining which of them is right and which is wrong. The testimony with reference to the check for $8.25, the only other item discussed for appellant by her counsel, is equally as unsatisfactory.

Appellee sought to recover $148.75 and was awarded judgment for $100.00 by the chancellor. Appellant admitted that she owed appellee for all the services performed by him for her on the farm from June 2, 1920, to October 1st, and for feeding and caring for her live stock during that time at the rate of $15.00 per month. The chancellor fixed $100.00 as the amount she owed for those services. Appellant contends that the chancellor erred in so finding only because, as she contends, the chancellor erred in dismissing her counterclaim. On the whole case, on the issues as made by the pleadings between appellant and appellee in this equitable action, the chancellor reached his conclusion and entered a judgment after considering the testimony on the various questions, conflicting as it was, as has hereinbefore been indicated. The case clearly falls within the rule so often announced and uniformly adhered to by this court. If, upon a consideration of the whole case, the mind if left in such doubt that it can not be said with reasonable certainty that the chancellor has erred, the judgment will not be disturbed.

Wherefore, the judgment is affirmed.